UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
BURNELL HAYNES,

                        Plaintiff,

                                        MEMORANDUM & ORDER
        -against-                       19-CV-7157(JS)(ARL)

TRANSUNION, LLC; EQUIFAX INFORMATION
SERVICES, LLC; EXPERIAN INFORMATION
SOLUTIONS, INC.; BANK OF AMERICA,
N.A.; CHASE BANK USA, N.A.; WELLS
FARGO N.A.; DISCOVER FINANCIAL
SERVICES; DEPARTMENT STORES NATIONAL
BANK; CITIBANK NORTH AMERICA, INC.;
TD BANK USA, N.A.; MIDLAND FUNDING,
LLC; and MIDLAND CREDIT MANAGEMENT
INC.,

                        Defendants.
------------------------------------X
APPEARANCES
For Plaintiff:          Daniel Zemel, Esq.
                        Elizabeth Easley Apostola, Esq.
                        Zemel Law, LLC
                        1373 Broad Street, Suite 203-C
                        Clifton, New Jersey 07013


For Defendants
Department Stores
National Bank &
Citibank, N.A.:         Justin Ward Lamson, Esq.
                        Ballard Spahr LLP
                        1675 Broadway, Suite 19th Floor
                        New York, New York 10022


SEYBERT, District Judge:

        Burnell Haynes ("Plaintiff") commenced this action

against Department Stores National Bank ("DSNB") and Citibank,

1

N.A. [1] ("Citibank," and together with DSNB, the "Moving Defendants"), among others, for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. By Memorandum & Order ("M&O") dated September 30, 2021, the Court granted in part and denied in part the Moving Defendants' motion to compel arbitration under the Federal Arbitration Act ("FAA"). (M&O, ECF No. 133.)[2] Currently before the Court is the Moving Defendants' motion for reconsideration, which Plaintiff opposes. (Mot., ECF No. 135; Opp'n, ECF No. 138; Reply, ECF No. 141.) For the following reasons, the Court GRANTS the Moving Defendants' motion to reconsider and adheres to its prior decision.

<u>BACKGROUND</u>

The Court presumes familiarity with the facts and procedural history of this case and recites only those necessary to adjudicate the pending motion. (See M&O at 2-9.)

I.   Facts

Plaintiff generally alleges the Moving Defendants violated the FCRA by furnishing inaccurate credit data related to several credit card accounts that Plaintiff claims were fraudulently opened or used in her name. (See generally Am.

---

[1] According to the Moving Defendants, Plaintiff erroneously named "Citibank North America Inc." as a defendant.

[2] Haynes v. TransUnion, LLC, No. 19-CV-7157, 2021 WL 7906567 (E.D.N.Y. Sept. 30, 2021). All citations are to the slip opinion, which is incorporated herein.

Compl., ECF No. 117.)  Plaintiff specifically alleges that the claimed identity theft occurred sometime between April 2016 and October 2017 when she was living away from her Long Island residence, which was being raised due to damage incurred from Hurricane Sandy.  According to Plaintiff, during that time period her mail and, consequently, her identity, were stolen, and several credit cards were subsequently taken out in her name and used without her knowledge.

Three personal credit cards issued by the Moving Defendants are the subject of their motion to compel arbitration: (1) the Macy's Account; (2) the Citibank Account; and (3) the Bloomingdale's Account.

DSNB, a wholly owned subsidiary of Citibank, issued the Macy's Account card to Plaintiff on or about January 29, 2011. Later, on April 15, 2015, DSNB mailed to Plaintiff the Macy's New Card Agreement which contained, among other things, an arbitration provision.  Notably, the Macy's New Card Agreement was mailed to Plaintiff at a time when she was still living at her Long Island residence and prior to her allegations of identity fraud.  The provision provides in relevant part for arbitration of:

> [A]ny claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship. . . . This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such

> as a co-applicant, authorized user, employee,
> agent, representative or an
> affiliated/parent/subsidiary company.

The Macy's New Card Agreement further defines "we, us, and our" to "mean Department Stores National Bank, the issuer of your account." It also permitted Plaintiff to reject the arbitration provision, but DSNB's records reflect that Plaintiff did not opt out. Rather, Plaintiff continued to use the Macy's Account after receiving the New Card Agreement. For that reason, Plaintiff "does not dispute that she opened the account" or "the validity of the Macy's arbitration agreement."

Plaintiff converted the Citibank Account to the current card sometime in 2013. As with the Macy's Account, Citibank mailed to Plaintiff a New Card Agreement containing an arbitration provision. However, the mailing was made in October 2016, at which time Plaintiff was not living at her Long Island residence. Accordingly, Plaintiff claims that she never received the Citibank New Card Agreement. Last, Plaintiff claims that she did not open the Bloomingdale's Account, but rather that it was the product of identity theft.

## II.   The M&O

The Moving Defendants asked the Court to compel arbitration of Plaintiff's FCRA claims arising out of the three foregoing accounts. In its M&O, the Court concluded that Plaintiff's claims arising under the Macy's Account are subject to

arbitration but further found that issues of fact precluded compelling arbitration as to the claims arising under the Citibank and Bloomingdale's Accounts.

To begin, the Court summarized the legal principles applicable to the Moving Defendants' motion as follows.  Under the FAA, arbitration must be compelled where (1) a valid agreement to arbitrate exists, and (2) the agreement encompasses the claims at issue.  Bank Julius Baer & Co. Ltd. v. Waxfield Ltd., 424 F.3d 278, 281 (2d Cir. 2005), abrogated on other grounds by Granite Rock Co. v. Int'l Bhd. Of Teamsters, 561 U.S. 287 (2010).  With respect to the first requirement -- a valid agreement to arbitrate -- the Court observed that "well-supported allegations of fraud in the formation of an arbitration agreement, such as where the party objecting to arbitration alleges an identity thief opened or otherwise interfered with the agreement containing the arbitration provision, preclude a finding as a matter of law that the parties have an enforceable agreement to arbitrate." (M&O at 14-15 (citing Accardo v. Equifax, Inc., No. 18-CV-5030, 2019 WL 5695947, at *7 (E.D.N.Y. Aug. 9, 2019) (finding dispute of material fact precluded compelling arbitration agreement under loan account allegedly fraudulently opened); Hudson v. Babilonia, No. 14-CV-1646, 2015 WL 1780879, at *2 (D. Conn. Apr. 20, 2015) (same for student loan account allegedly fraudulently opened); Garry v. Credit Acceptance Corp., No. 19-CV-12386, 2020 WL 1872361, at *2 (E.D. Mich. Apr.

15, 2020) (same for vehicle installment contract allegedly fraudulently opened by the plaintiff's accountant); Maranto v. Citifinancial Retail Servs., Inc., No. 05-CV-0359, 2005 WL 3369948, at *2 (W.D. La. Nov. 18, 2005) (same for credit card account allegedly fraudulently opened); Cornock v. Trans Union LLC, 638 F. Supp. 2d 158, 162 (D.N.H. 2009) (same for credit card account allegedly fraudulently opened by the plaintiff's ex-wife)).)   However, while well-supported allegations of identity fraud in the formation of an arbitration agreement may create a dispute of material fact as to whether the parties agreed to arbitrate their claims, where the allegations of identity fraud are unrelated to the formation of the arbitration agreement, such allegations do not impede enforcement of an otherwise valid arbitration provision.   (Id. at 20 (citing Xue Qin Liu v. TD Ameritrade, Inc., No. 18-CV-6764, 2020 WL 2113219, at *2 (E.D.N.Y. May, 4, 2020) (compelling arbitration despite allegations of fraudulent use of the plaintiff's credit card by identity thief); Errato v. Am. Express Co., No. 18-CV-1634, 2019 WL 3997010, at *2 (D. Conn. Aug. 23, 2019) (same); Johnston v. First Premier Bank, No. 17-CV-0189, 2017 WL 6508725, at *4 (S.D. Ohio Dec. 20, 2017) (concluding that, notwithstanding the plaintiff's claims of identity theft, "[t]he pivotal issue is whether the evidence shows Plaintiff was issued and used the credit card from First PREMIER

after notice of the arbitration provision"), report and recommendation adopted, 2018 WL 527098 (S.D. Ohio Jan. 24, 2018)).)

Applying the foregoing principles, the Court first found the parties agreed to arbitrate claims arising under the Macy's Account, because there was no dispute that Plaintiff (1) opened the Macy's Account, (2) was still living at her Long Island residence when DSNB mailed her the New Card Agreement containing the arbitration clause, and (3) continued to use the Macy's Account after receiving the New Card Agreement without opting out from the arbitration clause. In sum, Plaintiff adduced no evidence to show that the identity fraud alleged in this case interfered with the formation of the Macy's Account, including the arbitration provisions contained in the New Card Agreement. However, the Court concluded that the competent evidence compelled a different outcome with respect to the claims arising under the Citibank and Bloomingdale's Accounts. Specifically, the Citibank New Card Agreement was sent to Plaintiff in October 2016, at which time Plaintiff avers she was living away from her Long Island residence and that an identity thief stole some parcels of mail sent there during her absence. Further, the Moving Defendants failed to produce evidence that Plaintiff used the Citibank Account after receiving the Citibank New Card Agreement in October 2016. For these reasons, the Court determined disputes of material fact existed as to whether Plaintiff ever received the Citibank New

Card Agreement, or used the account after receiving it, and thus whether the parties agreed to arbitrate claims arising therefrom. (Id. at 17-18 (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 353 (2011) (Thomas, J., concurring)).)  And last, because Plaintiff swore that she did not open the Bloomingdale's Account, but rather that it was the product of identity theft, the Court was unable to find as a matter of law that the parties agreed to arbitrate claims arising thereunder.  (Id. at 24-25.)

The Court's inquiry did not end there, however, as the Moving Defendants had an additional argument: the Macy's Account's capacious arbitration provision required arbitration, not just of any claims arising under that agreement and related to debts associated with that account, but of all claims arising from Plaintiff's "relationship" with DSNB and Citibank, regardless of whether those claims arose out of a different account governed by a different arbitration provision.  According to the Moving Defendants, the phrase "arising out of or related to . . . our relationship" in the Macy's New Card Agreement extends the application of the arbitration provision contained therein to any claim arising out of the Plaintiff's relationship with DSNB or Citibank, including any claims arising from the Citibank and

Bloomingdale's Accounts, given Citibank's parent relationship with DSNB.[3]

The Court rejected this interpretation, finding "the plain language of the Macy's New Card Agreement does not support the Moving Defendants' expansive construction." (Id. at 22-23.) As the Court explained, the Macy's New Card Agreement makes clear that the "our" in "our relationship" refers to "Department Stores National Bank, the issuer of your account"; it does not say "our" refers to "Department Stores National Bank, and its parent," i.e., Citibank. For that reason, the Court concluded there is no basis in the Macy's New Card Agreement to conclude that the parties intended its arbitration provision to encompass claims arising from unrelated debts governed by distinct arbitration agreements, solely on the grounds that those debts were issued by a DSNB parent or affiliate. Further, the Court declined to re-write the arbitration provision to accommodate the Moving Defendants' maximal construction. (See id. at 23.)

The Court also considered, sua sponte, whether a separate sentence in the Macy's Account's arbitration provision could support the Moving Defendants' argument. That sentence adds that claims arising under the Macy's Account are subject to

---

[3] The Court analyzed this issue under the FAA's second requirement, i.e., that the arbitration agreement encompass the claims at issue. (M&O at 21-25.)

arbitration where they are "made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company."  The Court found that this sentence further supported its conclusion, because "the fact that the phrase 'an affiliated/parent/subsidiary company' appears in the last sentence of the arbitration provision shows that its omission from the definition of 'our' was intentional." (Id. at 24 (citing Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc., 821 F.3d 297, 310 (2d Cir. 2016)).)  The Court also pointed out that while the phrase "an affiliated/parent/subsidiary company" is connected grammatically to "someone making a claim through us or you," here, Citibank is not pursuing a claim "through" DSNB. (Id.) As a result, the Court concluded that that phrase could not "be read to re-define the word 'our,' already expressly defined in the Macy's New Card Agreement, to include DSNB's parent company, Citibank." (Id.)  Thus, the Court declined to compel arbitration of Plaintiff's claims arising under the Citibank and Bloomingdale's Accounts based on the language in the Macy's New Card Agreement.  The Moving Defendants ask the Court to reconsider this conclusion.

DISCUSSION

I.   Legal Standard

         "A motion for reconsideration should be granted only
when the [movant] identifies an 'intervening change of controlling
law, the availability of new evidence, or the need to correct a
clear error or prevent manifest injustice.'"  Kolel Beth Yechiel
Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99,
104 (2d Cir. 2013) (quoting Virgin Atl. Airways, Ltd. v. Nat'l
Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).  A motion for
reconsideration is "not a vehicle for relitigating old issues,
presenting the case under new theories, securing a rehearing on
the merits, or otherwise taking a second bite at the apple."
Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52
(2d Cir. 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136,
144 (2d Cir. 1998)) (internal quotation marks omitted).  Indeed,
"[i]t is black letter law that a motion for reconsideration may
not be used to advance new facts, issues or arguments not
previously presented to the Court[.]"  Nat'l Union Fire Ins. Co.
of Pittsburg, PA v. Las Vegas Prof'l Football Ltd. P'ship, 409 F.
App'x 401, 403 (2d Cir. 2010) (summary order) (internal quotation
marks and citations omitted).  The standard for granting a motion
for reconsideration is "strict, and reconsideration will generally
be denied unless the moving party can point to controlling
decisions or data that the court overlooked."  Analytical Surveys,

11

684 F.3d at 52 (quoting <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995)).

II.  <u>Analysis</u>

The Moving Defendants summarize their motion to reconsider as follows: "The Court made a clear error by narrowly construing the arbitration clause in Plaintiff's DSNB-issued Macy's Card Agreement, thus prohibiting DSNB from compelling arbitration of Plaintiff's claims related to her DSNB-issued Bloomingdale's credit card account and her Citibank-issued credit card account."  (Support Memo at 1, ECF No. 135.)  The Moving Defendants argue that the Court "overlook[ed]" key language in the Macy's arbitration provision as well as "numerous decisions by courts construing the breadth of similar, if not identical, Citibank/DSNB arbitration agreements." (<u>Id.</u> at 4-6.)  The Court is unpersuaded.

Again, the Macy's New Card Agreement provides for arbitration of: "any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship" including "[c]laims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company."  In their motion to reconsider, the Moving Defendants home in on this sentence, which

authorizes arbitration of claims made by or against anyone connected with DSNB. According to the Moving Defendants, this sentence "plainly permits DSNB to compel arbitration of Plaintiff's claims relating to the DSNB/Bloomingdale's and the Citibank accounts, as those are 'connected with' DSNB." (Id. at 4-5.) Failing to construe the agreement in this way renders the sentence superfluous, the argument goes.

The Moving Defendants rely on several cases where district courts analyzed substantially similar arbitration provisions to determine whether a debt collector as a non-signatory to an arbitration agreement could compel arbitration under the agreement governing the original debt. (Id. at 5-6.)[4] For example, in Madorskaya, the plaintiff and Citibank agreed to arbitrate any dispute arising out of the plaintiff's personal credit card account. Madorskaya v. Frontline Asset Strategies, LLC, No. 19-CV-0895, 2021 WL 3884177, at *1 (E.D.N.Y. Aug. 31, 2021). After the plaintiff amassed debt on the credit card and

---

[4] Because the Moving Defendants did not raise these cases in support of this argument in their original motion to compel, the Court need not consider them. Caribbean Trading & Fid. Corp. v. Nigerian Nat. Petroleum Corp., 948 F.2d 111, 115 (2d Cir. 1991) (party may not raise arguments for the first time on a motion for reconsideration). In the interest of resolving issues on the merits, however, the Court will address the cases, which are distinguishable. Nin v. County of Suffolk, No. 21-CV-0818, 2022 WL 599030, at *2 (2d Cir. Mar. 1, 2022) ("We have expressed a strong preference for resolving disputes on the merits." (citation omitted)).

failed to make regular payments, Citibank charged off the debt and sold it to a third-party collection agency, which in turn placed the debt with a debt collector for collection. Id. at *1-2. A company with an uncertain relationship to that debt collector subsequently sued the plaintiff to recover on the debt, and after settling the lawsuit, the plaintiff commenced a class action against the debt collector, alleging the debt collector's efforts to secure repayment of the debt violated the Fair Debt Collection Practices Act. Id. at *3. The debt collector moved to compel arbitration under the original agreement between the plaintiff and Citibank governing disputes arising from the personal credit card. Id. at *4; see also Clarke v. Alltran Fin., LP, No. 17-CV-3330, 2018 WL 1036951 (E.D.N.Y. Feb. 22, 2018); Fedotov v. Peter T. Roach & Assocs., P.C., No. 03-CV-8823, 2006 WL 692002, at *1 (S.D.N.Y. Mar. 16, 2006), cited in Support Memo at 6.

It is true that the arbitration provision in Madorskaya (and Clarke and Fedotov) was nearly identical to the one at issue here. But that is where the similarities end. Madorskaya, Clarke, and Fedotov address whether a third-party debt collector, having purchased a debt obligation, can enforce the terms of the arbitration agreement between the debtor and the original creditor which governed claims arising from that debt obligation. In the instant case, there are three separate and unrelated arbitration agreements governing three separate and unrelated debts. Because

14

neither Madorskaya or the terms of the Macy's New Card Agreement furnish support for compelling arbitration in these circumstances, the Court declines to do so. N. Assur. Co. of Am. v. Squard D Co., No. 98-CV-1026, 1999 WL 123575, at *2 (N.D.N.Y. Mar. 1, 1999) (denying motion to reconsider where the movant relied on decisions, not cited in its earlier papers, that were "distinguishable on their facts").

Further, the Moving Defendants' argument that the Court's interpretation of the arbitration provision rendered certain sentences superfluous misses the mark. Indeed, Madorskaya underscores that the sentence this Court supposedly overlooked -- that "[c]laims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company" are subject to arbitration -- may apply where, for example, a third-party debt collector is retained by a creditor to collect on a debt and seeks to compel arbitration under the original agreement between the creditor and debtor. The fact that this sentence has no bearing in the unique circumstances present here does not mean that the Court's interpretation has rendered it superfluous. See Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 226 (2008) (holding argument based on canon against surplusage not persuasive where the Court's construction did not render language superfluous).

Because the plain language of the Macy's New Card Agreement and the Moving Defendants' cases do not support their argument for arbitration, the Court finds it unnecessary to address whether compelling arbitration in these circumstances would be unconscionable, as Plaintiff argues. However, it is worth noting that the Moving Defendants' interpretation would bind Plaintiff to arbitration even where she expressly opted out of an arbitration agreement or did not even enter into an agreement to arbitrate in the first place. To illustrate this, consider the following hypothetical. After her experience in this litigation, Plaintiff resolves never again to agree to arbitrate claims relating to her credit card. She signs up for a new Citibank credit card, and when she receives the card agreement in the mail, she opts out of the arbitration agreement. She continues to use her Macy's Account. Sometime later, a dispute arises between Plaintiff, DSNB, and Citibank regarding her Macy's Account and the new Citibank credit card which results in litigation. Under the Moving Defendants' interpretation of the Macy's New Card Agreement, Plaintiff would be required to arbitrate her claims arising under the new Citibank credit card given Citibank's "relationship" with DSNB, which issued the Macy's Account, notwithstanding the fact that Plaintiff expressly opted out of the arbitration provision in the new Citibank credit card agreement.

Further, under the Moving Defendants' construction, even if an identity thief, rather than Plaintiff, opened the new Bloomingdale's Account without Plaintiff's consent -- which the parties dispute -- Plaintiff would be required to arbitrate claims under the fraudulently opened account, notwithstanding the fact that Plaintiff never agreed to arbitrate those claims, let alone knew about the account.  This is arbitration in aeternum, without support in the plain language of the Macy's New Card Agreement or caselaw in this Circuit or beyond.  See McDonnell Douglas Fin. Corp. v. Pe. Power & Light Co., 858 F.2d 825, 831 (2d Cir. 1988) ("The purpose of the Federal Arbitration Act 'was to make arbitration agreements as enforceable as other contracts, but not more so." (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967))); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 353 (2011) (Thomas, J., concurring) ("[T]he FAA requires that an agreement to arbitrate be enforced unless a party successfully challenges the formation of the arbitration agreement, such as by proving fraud or duress.").

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

CONCLUSION

For the stated reasons, the Court GRANTS the Moving Defendants' motion to reconsider (ECF No. 135) and adheres to its prior decision (ECF No. 133).

**SO ORDERED.**


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated: April  25 , 2022
       Central Islip, New York